IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANN N. JOHNSON                                                    PLAINTIFF

V.                                    NO. 12-5147

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Ann N. Johnson, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act).  In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

Plaintiff protectively filed her applications for DIB and SSI on December 7, 2009,

alleging disability since October 31, 2009,[2] the alleged onset date, due to "Bipolar depression

severe left knee injury."  (Tr. 40, 149, 204). An administrative hearing was held on November

14, 2011, at which Plaintiff appeared with counsel and she and her friend testified.  (Tr. 36-70).

_____

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

[2]At the hearing held before the ALJ on November 14, 2011, Plaintiff amended her onset date to October 31, 2009. (Tr. 40).

-1-

By written decision dated December 27, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - obesity, seizure disorder, mood disorder, and anxiety disorder. (Tr. 14).   However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15).   The ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: She can lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently; stand or walk 2 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. She cannot climb ladders, ropes, or scaffolds; occasionally can perform all other postural activities; should avoid concentrated exposures to extreme heat and cold, fumes, odors, gases, and poor ventilation; and avoid even moderate exposures to hazards. She has moderate limitations affecting her ability to maintain attention and concentration for extended periods; moderate limitations affecting her ability to complete a normal workday and workweek without interruptions from psychological based symptoms; moderate limitations to perform at a consistent pace without an unreasonable number and length of rest periods; moderate limitations in her ability to respond appropriately to changes in the work setting; and moderate limitations in her ability to set realistic goals or make plans independently of others.

(Tr. 17).   With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing her past relevant work, but that there were other jobs Plaintiff would be able to perform, such as clerical mailer, optical assembler, and circuit board assembler. (Tr. 23). Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on May 15, 2012. (Tr. 1-4).   Subsequently, Plaintiff filed this action. (Doc. 1).   This case is before the undersigned pursuant to the consent of the parties. (Doc. 5 ).   Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 10).

AO72A
(Rev. 8/82)

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3),

-3-

1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff raises the following issues on appeal: 1) The ALJ erred in his determination of severe impairments; 2) The ALJ erred by failing to analyze Plaintiff's personality disorder under Listing 12.08; 3) The ALJ erred in his obesity evaluation; 4) The ALJ erred in his RFC determination; 5) The VE had no evidence of any experience or expertise for the Arkansas region; 6) The ALJ erred in his credibility findings.  (Doc. 9).

**A.   Severe Impairments:**

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.   20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is not severe when medical

-4-

and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § § 404.1521, 416.921.  The Supreme Court has adopted a "de minimis standard" with regard to the severity standard.  Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

Plaintiff contends that both her personality disorder and left knee impairment had more than a minimal effect on her ability to perform work-related activities.  On November 13, 2009, an X-ray of Plaintiff's left knee revealed a normal left knee. (Tr. 300).  On May 10, 2010, Dr. Randy Duane Conover conducted a General Physical Examination, indicating Plaintiff had some decreased range of motion in the hips, knees, ankles, and spine; muscle weakness of 4/5 in her left leg, no muscle atrophy; and a steady gait.  (Tr. 252).  He also found that she could not squat/arise from a squatting position. (Tr. 252).  He concluded that Plaintiff had moderate limitations in her ability to walk, stand, and lift. (Tr. 253).

On May 13, 2010, a Physical RFC Assessment was completed by Dr. Jim Takach, who found that Plaintiff would be capable of sedentary level work, but that Plaintiff could never climb ladders/ropes, scaffolds, and could occasionally climb ramps/stairs; balance; stoop, kneel, crouch, and crawl.  (Tr. 261).  Plaintiff also only made minimal complaints of pain and did not complain of any knee pain to a physician after May 2010, even though she continued to receive treatment for other conditions.

With respect to Plaintiff's personality disorder, the ALJ found that Plaintiff suffered from the severe mental impairments of mood disorder and anxiety disorder.  (Tr. 14).  In addition, as indicated by Defendant in her brief, the evidence shows that Plaintiff was not consistently diagnosed with a personality disorder. Finally, Plaintiff has not shown how the inclusion of the

-5-

additional impairment of personality disorder would have affected the disability determination.

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's findings regarding Plaintiff's severe impairments.

**B. Whether Plaintiff's Mental Impairments Met Listing 12.08:**

Plaintiff contends that the ALJ failed to analyze Plaintiff's personality disorder under Listing 12.08 Personality Disorders. Plaintiff concedes the ALJ typed the number 12.08 in his decision. However, she asserts that there is no discussion of personality disorder or borderline personality disorder in the analysis. (Tr. 9).

In his decision, the ALJ considered Plaintiff's mental impairments, singly and in combination, and concluded that they did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08. (Tr. 16). He further considered whether the "paragraph B" criteria was satisfied. He found that in activities of daily living, Plaintiff had mild restriction; in social functioning, Plaintiff had mild difficulties, in concentration, persistence or pace, Plaintiff had moderate difficulties; and had experienced no episodes of decompensation, which had been of extended duration. (Tr. 16). In her brief, Defendant set forth the criteria for meeting Listing 12.08, and correctly concluded that Plaintiff failed to submit credible evidence proving that any of her impairments met the criteria during the relevant period of review.

For those reasons, as well as those reasons given in Defendant's well-stated brief, the Court finds the ALJ analyzed Listing 12.08 correctly.

**C.    Obesity Evaluation:**

Plaintiff contends that the ALJ erred in his obesity evaluation under SSR 02-1p, in light

-6-

of the evidence in the record as to height, weight, BMI, and functional restrictions, and specifically, in limiting his review to Step Three listings, and not Step Two severity and Step Four RFC discussion. (Doc. 9) .

In his decision, the ALJ addressed Plaintiff's obesity, indicating that he took Plaintiff's obesity into consideration, "along with its potential risks, limitations, restrictions and co-morbidities." (Tr. 16). He stated that he evaluated her condition in the context of each of the other impairments that, by itself, may meet the requirements of a listing. He also considered whether there was an impairment that, in combination with obesity, met the requirements of a listing. (Tr. 16).

As indicated by Defendant, no physician actually placed restrictions on Plaintiff's work-related functioning due to Plaintiff's obesity. In fact, on May 10, 2010, Dr. Conover found that Plaintiff could sit, handle, finger, see, hear and speak, and had moderate limitations in her ability to walk, stand, and lift, and suggested that she had severe limitations in her ability to carry, secondary to his diagnoses. (Tr. 253). On May 13, 2010, non-examining consultant, Dr. Jim Takach, found Plaintiff capable of sedentary work with additional restrictions. The ALJ took Plaintiff's obesity into account in his RFC assessment, as sedentary work does not include postural activities related to climbing, balancing, stooping, kneeling, crouching, or crawling. 20 C.F.R. § 404.1567(a), 416.967(a). As urged by Defendant, Plaintiff presents no actual limitations stemming from her obesity, stating instead that the ALJ should have assumed it affected her ability to work simply because it existed.

Based upon the foregoing, and those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the fact that the ALJ considered Plaintiff's

-7-

obesity in making his determination.

**D.     RFC Determination:**

RFC is the most a person can do despite that person's limitations.   20 C.F.R. §404.1545(a)(1).   It is assessed using all relevant evidence in the record.   Id.   This includes medical records, observations of treating physicians and others, and the claimant's own description of her limitations.   Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).   Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).   The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).   Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).   "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."   Id.

Plaintiff challenges the weight the ALJ gave to the physician's opinions and also the fact that the ALJ did not discuss Plaintiff's GAF scores.   As stated earlier, the ALJ found that Plaintiff was capable of performing sedentary work with certain limitations.

In weighing the physicians' opinions, the ALJ stated:

> There are several medical opinions contained in the medical evidence of record. Jim Takach, M.D., DDS consultative expert, opined after examination of the evidence, the claimant could perform sedentary work with added restrictions consistent with seizure precautions. (Exhibit 4F) Bill F. Payne, M.D., DDS consultative examiner, affirmed Dr. Takach's assessment. (Exhibit 8F) Great weight are [sic] given to these opinions as they are consistent with the medical evidence of record. There are no treating physicians' opinion on the physical residual functional capacity

-8-

of the claimant.

(Tr. 21).

With respect to Plaintiff's mental impairments, the ALJ discussed Plaintiff's visits to various health care providers as well as Plaintiff's reports of her own limitations, and found that Plaintiff was not fully credible.  The ALJ found that Plaintiff had moderate limitations affecting her ability to maintain concentration, attention, and to complete the normal workday and workweek without interruptions from psychological based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others. (Tr. 17).

It is noteworthy that Plaintiff did not list seizures as a condition that limited her ability to work. (Tr. 149).  Nevertheless, On March 25, 2010, Plaintiff reported that her last seizure occurred 6 months prior. (Tr. 292). In a May 12, 2010 Mental Diagnostic Evaluation, Terry L. Efird, Ph.D., found that Plaintiff's ability to perform basic self-care tasks independently was endorsed. (Tr. 255).  Dr. Efird's diagnosis was:

| | |
|---|---|
| Axis I: | major depressive disorder, moderate; generalized anxiety disorder |
| Axis II: | borderline personality disorder |
| Axis V: | 53-63 |

(Tr. 257).   Dr. Efird further found that Plaintiff communicated and interacted in a reasonably socially adequate manner and reasonably intelligible and effective manner; that she had the capacity to perform basic cognitive tasks required for basic work like activities; that she appeared able to track and respond adequately for the purposes of the evaluation and no remarkable problems with attention/concentration were noted during the evaluation; that she generally

-9-

completed most tasks during the evaluation, and that she appeared to have the mental capacity to persist with tasks if desired; and that there were no remarkable problems with mental pace or performance noted.  (Tr. 257).

On May 14, 2010, non-examining consultant, Jerry Henderson, Ph.D. completed a Psychiatric Review Technique form and a Mental RFC Assessment.  (Tr. 267-279, 281-284). Dr. Henderson concluded that Plaintiff had moderate degree of limitation with difficulties in maintaining concentration, persistence, or pace, and a mild degree of limitation in restriction of activities of daily living and in maintaining social functioning, and no episodes of decompensation, each of extended duration. (Tr. 277).   He noted that marked functional limitations were not documented. (Tr. 283).    Dr. Henderson also concluded that Plaintiff was able to perform work where interpersonal contact was routine but superficial, e.g. grocery checker; complexity of tasks was learned by experience, with several variables, where judgment is within limits, where supervision required is little for routine but detailed for non-routine (semiskilled).  (Tr. 283).

On December 20, 2010, Plaintiff was seen at Ozark Guidance for depression and bipolar disorder, and it was noted that she had been out of treatment for a number of years. (Tr. 371). It is noteworthy that Plaintiff indicated that she had had two seizures in her sleep during the week, and that she reported that she had been on medications in the past but had not been on them consistently in at least a year, probably two.  (Tr. 372). She reported that she needed to get back on her medication and "get my life stable again." (Tr. 372).  It is also noteworthy that she reported that she had worked in the radio business for a number of years but was discharged due to substance abuse. (Tr. 372). Plaintiff was diagnosed as follows:

-10-

| Axis I: | Bipolar Disorder NOS |
| Axis II: | Personality Disorder NOS |
| | Epilepsy unspecified without intractable epilepsy |
| | Migraine unspecified without intractable migraine |
| Axis V: | 48 |

(Tr. 376). A March 23, 2011 report from Ozark Guidance indicated that Plaintiff did not return, and dropped out of treatment. (Tr. 381). Plaintiff then returned to Ozark Guidance on April 8, 2011, and was given a GAF score of 39. (Tr. 387). Again, on June 30, 2011, Ozark Guidance reported that Plaintiff did not return, and dropped out of treatment. (Tr. 392).

On October 7, 2011, Plaintiff was seen by Margaret R. Rutherford, Ph.D., at Northwest Arkansas Free Health Clinic. Dr. Rutherford diagnosed Plaintiff with probable bipolar and OCD traits, rule out "borderline," and epilepsy. (Tr. 368). She planned to see Plaintiff on November 4, 2011, and reported Plaintiff's prognosis was good. (Tr. 368). There is no indication that Plaintiff saw Dr. Rutherford again.

On February 28, 2011, Dr. Larry D. Tuttle saw Plaintiff, noting that Plaintiff reported having 3-4 seizures weekly. (Tr. 305). He noted that Plaintiff had been getting her medication through the free health center, and used tobacco. (Tr. 305). He assessed Plaintiff with petit mal seizures, "Fair Control - cont. tegretol get level;" abscess of breast, and bipolar disorder, recurrent. (Tr. 306).

The ALJ gave great weight to Dr. Henderson and Susan Schaefer, Ph.D., who affirmed the assessment of Dr. Henderson. (Tr. 21). He further found that Plaintiff was not fully credible. The ALJ noted that Plaintiff's criminal history and willingness to break the law to achieve a purpose or desire had eroded her credibility, and that she reported she failed to pay child support in 2010 and was convicted of theft in 2007. (Tr. 22). In addition, when Plaintiff was questioned

-11-

at the hearing why she did not report seizures at the time she applied for disability, she stated that she "probably was having a seizure when I filled it out." (Tr. 22). Although the ALJ did not discount all of Plaintiff's complaints, he noted that Plaintiff's treating physicians did not place any functional restrictions on her activities that would preclude sedentary work activity with the previously mentioned restrictions.

Plaintiff argues that there was no discussion of Plaintiff's GAF scores by the ALJ. As indicated by Defendant, GAF scores are only snapshot measurement that have no direct correlation to the severity requirements in the mental disorder listing. Jones v. Astrue, 619 F.3d 963, 963-964 (8th Cir. 2010). In addition, "'an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it.'" Id. at 974(quoting Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 666 (8th Cir. 2003).

Based upon the foregoing, the Court finds there is substantial evidence to support the weight the ALJ gave to the physicians' opinions, and to support the ALJ's RFC determination.

**E.     VE Qualifications:**

In making her argument, Plaintiff assets that the VE's testimony is incompetent because she was from Oklahoma rather than Arkansas. However, as urged by Defendant, this argument is without merit.

The ability to perform jobs in the national economy "precludes a claimant from being deemed disabled." Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006)(citing 20 C.F.R. §§ 404.1520(g)). In addition, Plaintiff was given an opportunity at the hearing to object to the VE's qualifications, and failed to do so. This failure precludes Plaintiff from raising an objection in the judicial proceedings. See Weikert v. Sullivan, 977 F.2d 1249, 1254 (8th Cir. 1992); Bankston

-12-

v. Astrue, No. 4:08CV00286JMM, 2009 WL 1605798 at *4 (E.D. Ark. June 8, 2009).

Based upon the foregoing, the Court finds substantial evidence to support the ALJ's consideration of the VE's opinion.

### F.   Credibility Findings:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff argues that the ALJ failed to make credibility findings concerning the testimony of Mr. Bynum.  However, Mr. Bynum's statements merely reflected the same complaints Plaintiff made. Therefore, the ALJ made an implicit finding regarding Mr. Bynum's testimony by determining the credibility of Plaintiff.  See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). In addition, any deficiency in this case does not require reversal because the ALJ's conclusion is supported by substantial evidence.  See id.  As indicated earlier, the ALJ was justified in making his credibility finding regarding Plaintiff, and there is substantial evidence to support his findings.

-13-

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 22nd day of August, 2013.


/s/ *Erin L. Setser*

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-14-